First case on calendar is Johnson v. Perry. We'll hear you now. Good morning. My name is Lori Mazarek and I represent the defendant appellant in this case, Mr. Stephen Perry. To begin, may it please the court, this case I think highlights a number of very important public policy principles and to begin I just want to go over those briefly. The first I think is to recognize that schools are different and part of that is because who's in those schools? Children. The second important public policy principle is that officials in those schools should have the ability to have discretion in an effort to maintain stability, tranquility, and safety in those schools. The last piece that I think is an important public policy principle is that courts should be mindful that they shouldn't be involved with daily issues and conflicts in schools. We're not really concerned with the merits on this appeal, are we? Are we concerned with the denial of summary judgment based on a qualified immunity claim? Yes, Your Honor. Maybe you should get to that. And so the issue is whether in fact the constitutional rights of the plaintiff were violated or whether it was clearly established that there was a violation of those constitutional rights. So we're dealing with First Amendment and due process. Before we get there we have to determine whether there's an issue of fact that allows us to reach those questions. And so the question is do you concede on this appeal that your client retaliated against the plaintiff for saying that he's a have to accept the facts. You would. I would. And the First Amendment issue is with respect to First Amendment assembly rights. And so the the problem and the concern that I have is that plaintiff is claiming that he was banned from attending school events on school property and that this implicated his First Amendment right to assemble. So in essence he's claiming as part of that assembly right included is a right to attend school events. And that's where Your argument, I take it, is that there is no clearly established, there might be some other category of clearly established law, but there is no clearly established law with respect to the First Amendment right to assembly that he is trying to assert. Yes. And so that is the first level we need to get over and through. So he can deprive him of that ability to do that as retaliation for the public speech of calling him a liar. It has to be your position, I take it. Well, the piece, it's not clear to me that that is the claim. The claim seems to be that in and of itself the ban implicated an ability to go on to school property to attend school events. And that implicated a First Amendment right. But the ban was imposed very shortly after they had this conversation in which first your client called his daughter a liar and then the plaintiff called your client a liar for saying that. And if it is, if there is a retaliation claim being made then I think the only thing that the plaintiff is putting forth is a temporal proximity to words being said, assuming they were protected, expression and by the principal. But it's not clear to me that that's even what the plaintiff is claiming based on complaints, based on his allegations at this point. So let me let me ask you a question because as you I think put it, it's a little odd in the sense that it's a First Amendment right to assembly. But what if the facts were a little different? That is, what if the parent here just looked at the principal funny, in a funny way or slightly threatening way or in a way that the principal viewed as slightly threatening. And on that basis, so no pounding of hands, no other aggressive statement and so on, on that basis would the principal as a matter of our clearly established law be permitted to prohibit that parent from school grounds? I think that it's not clearly established that he would not be able to do that when you look at the law that exists as far as the discretion that is given to public officials. The, that's clear, that's clear policy and law that exists. I also think that there would have to be some establishment that the parent was engaging in some sort of protected expression or speech. And again, that that's where I think we're missing here. That's the piece that's... So it's an unfettered right of principals, and I know there's a due process issue, but there's an unfettered right, at least as a matter of the First Amendment issue, of principals to block parents from accessing school grounds. Under the First Amendment? Yes. That's, I mean, I think under the First Amendment. It, at the end of the day, you know, there, I'm not suggesting that this is the case, but whether an official acted in a way that was inappropriate or he should have done things differently doesn't equate to the official violating someone's First Amendment constitutional right to assemble. They're different, they're different questions. Would you address the due process issue, and in particular the procedural issue? So the court essentially, in this case, brought back the due process count. So there's two pieces. The liberty interest piece, and then I believe the court is also saying that if there was an implication of a First Amendment right, then there would have to be some process that is due to the plaintiff before that right can be taken away. So as far as the liberty interest piece, I think it is very clear that there's no liberty interest implicated in a parent's ability to come onto school property to attend school events. Is there any difference between the liberty interest of a parent to come onto school property to see what's going on, and that of any other citizen or non-citizen for that matter? Well, I think a parent certainly has an interest in directing, managing, controlling the education of his or her child, but at the end of the day . . . But you're saying that does not even imply a constitutional right to be present on school property. Yes, that does not imply any type of liberty interest to be on school property. Wasn't the plaintiff also barred from the Mohegan Sun casino arena, which is not school property? It is not. There was one event that was held off school property, a basketball game, held at the Mohegan Sun arena, which he was not able to attend. That was the one event. When you say not able to attend, you mean he was escorted off the premises . . . . . . by guards. Based on the facts, yes. Based on the facts. . . . at your client's direction. Based on the reasonable inferences of the plaintiff, yes, which we have to look at here. Did you not forfeit? The argument on the other side, I think, is that you forfeited or waived the qualified immunity defense with respect to the due process claim because you could have, after the claim was revived, you could have moved to reconsider, you could have moved for any number of different things, and you didn't do that. What happened here was the due process count had been out for a very long time . . . I understand that, but why couldn't you have done something once it was revived? I could have, but I don't think I was required to. I don't think that I was required to ask the court to clarify in any way. The qualified immunity was established. The defense was set forth in the defendant's answer. Do you think that we've got enough, based on these allegations, to make a constitutional violation? I do. We'll hear you on rebuttal. Thank you. To please the Court, I'm John Williams on behalf of the appellee. I think that the truly salient fact about this appeal is that even if the appellant prevails here on every claim he makes, there still will be a trial with the exact same evidence, the exact same witnesses on the State law claim as to which summary judgment was also denied, which makes me inclined to feel that there's something almost frivolous about taking an interlocutory appeal in this particular instance, since it cannot have any practical effect on whether or not the defendant has to stand trial, which was, I think, the reason . . . Is the scope of the available remedies the same for the Federal and the State claims? Yes. There's both compensatory and punitive damages available. And attorney's fees? Attorney fees, punitive damages and attorney fees under State law are one and the same in Connecticut. So there's an overlap there. That having been said, it does seem clear that the facts on which the defendant lies in his appeal are his version of the facts and not the appellee's version of the facts. The appellee's version of the facts, as you pointed out, Your Honor, Judge Jacobs, is that this was a pure case of retaliation. Mr. Perry . . . I'm sorry, Mr. Johnson had a tape recording, a recording that his daughter had made of the very confrontation that she'd had with Mr. Perry in front of some witnesses. And . . . Is that recording in the record? It's acknowledged in the record. That is to say, the recording itself wasn't submitted to the Court, but in the transcript of the deposition of Mr. Johnson, which is in the record, counsel for the appellant specifically acknowledged that a recording had been provided to her, asked him if this was indeed the recording that his daughter had made. He said, yes, that it was. So it was produced to the . . . Oh, yes. He produced it in pre-trial discovery. So they have it. Are there any cases that hold as you would have the Court hold with respect to this kind of fact situation, where a parent has been on school property and been banned from school property because of some disagreement with the school authorities? I'm not aware of a case that is factually exactly on all fours with this. Okay. How close can you get? Well, we can get close enough that there's . . . and I'm not talking about the First Amendment issue. There's plenty of case law that retaliation, using public power to retaliate against someone for having . . . In a school context? Can you get anything in the school context? Well, for example, the armband case. That's Tinker, I believe. It's comparable. It's not the same, of course, but it's comparable. That's a student wearing an armband. There have been cases which . . . That's a speech case. So we're talking about an assembly case. Right. Well, we've had . . . You chose the constitutional violation, so that's what . . . I think I pointed out some case law, even in this circuit, dealing with the non-parents to utilize school property for, for example, religious purposes. And that's been . . . For fundraising or for presenting a public point of view, public policy point of view? A religious expression during non-school hours. But here again, as you pointed out, Your Honor, more is involved here than access to school property. Because one of the things that was done to Mr. Johnson was that he was physically removed from a public venue, the Mohegan Sun Arena, at the instruction of Mr. Perry, by armed guards, in front of his family and friends, and retaliation for what he had done. And certainly there's plenty of authority that that's kind of retaliatory behavior. But if you set aside the due process issue for a second again, are you saying that there is some unfettered right under the First Amendment right to public assembly of parents to enter school grounds? I'm not saying it's unfettered. I think it's clearly limited. But there is a right subject to those limitations, reasonable limitation, as most First Amendment rights are subject to reasonable limitation. It happens that what limitation is reasonable in the case of a parent accessing school property, there's a lot more control that's given to the school administrators. That's very clear. But I don't believe any case ever has held that there is an unfettered power of the administrators to exclude. There are some limits. And in this particular case, there's no rational basis at all. Isn't that looking at it through the wrong end of the telescope? The question is whether your client had a clearly established statutory or constitutional right, and there's no statutory right, but constitutional right, to be on school property if for whatever reason a teacher or a principal decides that they're a disruptive influence. I think it's for whatever reason, Judge Jacobs, that gets me past that hurdle. There are many reasons that have been established in the case law that permit school administrators to bar parents from school property. But there is no case that I am aware of that has ever held that they have an unfettered right, that there has to be some legitimate, articulable basis for doing so. And there is none whatsoever in this case, if you take the facts from my client's perspective. Well, if you are correct then, it does seem to me that the schools could be overrun with obstreperous and disruptive parents until such time as there's a jury trial in each instance. Am I correct? I'm not sure I understood your question. Well, if the principal can't keep somebody out that the principal deems to be disruptive, then you can have obstreperous and disruptive parents floating around the schools. But I'm not asking for that. I'm not asking for that really. I'm not saying that the principal doesn't have the power to exclude and obstruct. No, no, no. But what you are saying is that if, I mean, the obvious thing is that anyone who's disruptive and obstreperous would be saying things that are And we'll be able to plead, as you were pleading, retaliation. And we'll have an issue of fact each time. And the parents will be able to be there. And each time we'll have to have a jury trial. No, actually, that's a very good example because suppose a parent goes to the Board of Education and complains about the quality of education being provided in this particular school. Complains about the competence of the principal. On that basis, can the principal bar the parent from the school? I don't think so. And that's we don't even have anything that extreme in this case, if you look at the facts from my client's perspective. My client attended a meeting at which the principal volunteered, your daughter is a liar and a manipulator. And my client said to him, Are you saying that you did not say, and he quoted verbatim from the tape. And the principal said he did not, that the daughter, if she was claiming it, was a liar. And he said, Well, you're a liar. And on that basis, he was excluded. Maybe I'll go back to just Kierse's question then. Can you just point me to one case that frames this in the context of a parent's constitutional right as a matter of the First Amendment to public assembly within the school? No. You don't have that? I don't have that. Okay. But that's what, so you went down this road of claiming a clearly, well, a violation of a clearly established right under the First Amendment to public assembly. I quoted this before, not always with success to other panels of this of the cases in the Seventh Circuit, which have held that no case has ever explicitly held that social workers cannot sell their youthful charges into slavery, but nobody would suggest that they have qualified immunity. I agree with that. But this is a slightly closer case, right? Perhaps a little closer, but then of course we still have the liberty interest of the parent, which certainly is entitled to due process protection, which wasn't provided. So again, as I said at the opening, any way you look at this case . . . Was the qualified immunity defense raised to the due process claim raised in the answer, defendant's . . . Well, the answer wasn't filed until after . . . After the claim had been dismissed. Right. So it was not . . . Right. It was never addressed in the answer with regard to due process. Could have been as counsel acknowledges, but it wasn't, and therefore I submit they've waived that for this purpose. Well, if the case goes back, they can always ask the district court for to assert a defense to a claim that had been dismissed before their original answer was filed. They could have, but they didn't. Thank you, Mr. Williams. Thank you. We'll hear rebuttal. Just very briefly to address a few of the points raised by Mr. Williams. With respect to a claim that the appeal could be deemed frivolous, because, you know, at the end of the day, plaintiff's claim is that the facts are what they are. And, you know, whether it's in state court, federal court, it's going to be . . . it would be tried, and the facts are what they are. You know, qualified immunity protects an official from suit. So the official, if he is entitled to that defense, should not even have to stand trial. So that is the basis here for bringing the appeal. Wouldn't you think that the plaintiff here would have a right to attend a basketball game at which his daughter is playing in a venue other than school property? Well, again . . . I mean, I'm not sure anybody would want to, but, you know, you have a right to. I don't think you have a First Amendment right to. And I don't think, as part of that ability to go, implicated is a liberty interest because you have some right to direct and control the education of your child. I'm kind of wondering what on earth right your client had to send people to escort him out of a public venue. I mean, anybody could have gotten a ticket to go to this thing. They could have. He was basing his decision on the ban that was imposed, and he was executing his ability and his discretion in having that ban to remove him from the property. I mean, everybody's got a . . . On that, it seems to me that most school officials would understand that they can't ban someone from non-school property. Isn't that fair to say? Well, there are some cases that suggest that that's not the case, that they hold broadly school events. Not in this circuit, admittedly. But there are cases that say that. And, again, I think we have to go back to whether the conduct of the plaintiff was protected under a First Amendment or due process right. And that I just don't see. I thought that I saw that you had actually put in an affirmative defense of qualified immunity with respect to due process. I did not, Your Honor. I might have misspoken. There was a very general qualified immunity defense as to the entire count, but at the time that the complaint was filed, there were four counts, filed a motion to dismiss to get rid of all of the counts. The due process count was dismissed, not on qualified immunity grounds, and I didn't raise qualified immunity grounds in that motion to dismiss. In the motion to dismiss. I did not. You raised it in the answer, but not in the motion to dismiss. Right. But at the time that the answer was filed, that count was gone. Right. So I really, by way of the answer, didn't have an opportunity to raise that defense because the count was gone at the time that the answer was filed. So it's an unusual . . . Procedural problem. It really is. Thank you. Thank you very much. Thank you both. We'll reserve decision.